```
              UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )    Chapter 7
WESLEY A. PICKENS and           )
BROOKE R. PICKENS,              )
                                )    Bankruptcy No. 06-01120
     Debtors.                   )
------------------------------  )
SHERYL SCHNITTJER, Trustee      )
                                )    Adversary No. 06-09166
     Plaintiff,                 )
                                )
vs.                             )
                                )
DENNIS PICKENS and              )
DEBBIE PICKENS,                 )
                                )
     Defendants.                )
```

**ORDER RE: TRUSTEE'S FIRST AMENDED COMPLAINT**

This matter came before the undersigned for trial on November 8, 2007. Attorney Abbe Stensland appeared for Plaintiff/Trustee Sheryl Schnittjer. Attorney John M. Titler appeared for Defendants Dennis and Debbie Pickens. After trial, the Court took the matter under advisement. The time for filing briefs has passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

**STATEMENT OF THE CASE**

Trustee seeks to avoid transfers Debtors made to Defendants pursuant to 11 U.S.C. § 547(b). Pursuant to consent and stipulation, the Court granted Trustee summary judgment on her case in chief on April 26, 2007. The Court denied Trustee's motion for partial summary judgment striking Defendants' § 547(c)(9) defense on June 4, 2007. Defendants assert affirmative defenses under §§ 547(c)(1) (contemporaneous exchange for new value), (c)(2) (ordinary course of business), (c)(4) (subsequent advance of new value), and (c)(9) (small commercial preference).

**FINDINGS OF FACT**

Debtors Wesley and Brooke Pickens filed their Chapter 7 petition on September 21, 2006. Defendants Dennis and Debbie Pickens are Wesley's parents. In 2003, Debtors borrowed approximately $30,000 from Dennis to start a small business under the name Candle Scents. Dennis took out a second mortgage on Defendants' home to fund the loan. Debtors made loan payments

totaling $3,005 to Dennis in the twelve months preceding Debtor's petition date (Ex. 1).

Debtors later requested financial assistance from Debbie to purchase inventory. She allowed them to use two of her credit cards, Capital One and AT&T Universal, from January 2004 to January 2006. Debtors charged approximately $22,000 on these credit cards during the twenty-four month period (Ex. 6). They made payments totaling $5,351 to Debbie in the twelve months prior to filing their Chapter 7 petition (Ex. 2).

Defendants filed a UCC financing statement with the Iowa Secretary of State approximately one hour before Debtors filed their Chapter 7 petition. The financing statement purports to grant Defendants a security interest in "all inventory, equipment and assets of Candle Scents" (Ex. 4).[1] An undated security agreement states that Defendants took a security interest in Debtor's current and after-acquired inventory, equipment, accounts, and general intangibles (Ex. 3). The agreement states that the security interest was granted to Defendants on account of "loans for the benefit of Candle Scents business which includes second mortgage on secured parties home together with credit card balance" (Ex. 3). Debtors list Defendants as secured creditors with liens on Candle Scents' inventory and business equipment on Schedule D. The parties stipulate that the inventory had a value of $2,000 and the equipment had a value of $1,590 at the time Debtors granted the security interest.

Trustee seeks to avoid the payments made to Dennis, the payments made to Debbie, and the transfer of the inventory lien Debtors granted to Defendants. She does not seek to avoid the equipment lien. Defendants raise various affirmative defenses under § 547(c). Trustee requests entry of a money judgment for the value of the transfers under § 550(a) (Doc. 52).

## CONCLUSIONS OF LAW

Trustee seeks to avoid transfers from Debtor to Defendants as preferences under § 547(b). Trustee must prove six elements to avoid a transfer as a preference:

> (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days

---

[1] As Trustee notes, the Financing Statement incorrectly identifies Defendants as both "Debtors" and "Secured Parties." It identifies "Pickens, Wesley and Brooke, d/b/a Candle Scents" as "Additional Debtors" (Ex. 4).

2

prior to the commencement of the bankruptcy case (or one year for insiders), (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor had asserted its claim in a Chapter 7 liquidation.

In re Interior Wood Prods. Co., 986 F.2d 228, 230 (8th Cir. 1993); 11 U.S.C. § 547(b). Trustees have the power to avoid preferential transfers so that one creditor does not impair the claims of other creditors. Union Bank v. Wolas, 502 U.S. 151, 159 (1991).

The parties submitted a partial stipulation dated April 26, 2007. The stipulation provides that Trustee satisfied her burden of proof on all § 547(b) elements. The Court thereafter entered a consent order granting Trustee summary judgment on her case in chief (Doc. 27). Debtors' payments to Dennis, their payments to Debbie, and the security interest in inventory they granted to Defendants are all preferential transfers. The remaining issues relate to Defendants' affirmative defenses under §§ 547(c)(1) (contemporaneous exchange for new value), (c)(2) (ordinary course of business), (c)(4) (subsequent advance of new value), and (c)(9) (small commercial preference).

**CONTEMPORANEOUS EXCHANGE**

Section 547(c)(1) states the trustee may not avoid a transfer:
> (1) to the extent that such transfer was—
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1). Contemporaneous exchanges for new value are not preferential "because they encourage creditors to deal with troubled debtors and because other creditors are not adversely affected if the debtor's estate receives new value." In re Jones Truck Lines, Inc., 130 F.3d 323, 326 (8th Cir. 1997).

Defendants must show, by a preponderance of the evidence, three elements to establish this defense. In re Armstrong, 291 F.3d 517, 525 (8th Cir. 2002); 11 U.S.C. § 547(c)(1); 11 U.S.C. § 547(g). First, they must prove both parties intended the exchange to be contemporaneous and for new value. In re Lewellyn & Co., Inc., 929 F.2d 424, 428 (8th Cir. 1991). Intent is

3

generally shown through circumstantial evidence such as the parties' agreement and their course of dealing.  Id.

Second, Defendants must show the exchange was contemporaneous in fact.  Armstrong, 291 F.3d at 525.  The analytical focus for this prong is the "temporal proximity" between the Defendant's extension of credit and Debtor's transfer of assets.  Pine Top Ins. Co. v. Bank of America Nat'l Trust & Sav. Ass'n, 969 F.2d 321, 328 (7th Cir. 1992).  The exchange need not be simultaneous, just substantially contemporaneous.  In re Dorhold, Inc., 224 F.3d 871, 874 (8th Cir. 2000).

Finally, Defendants must demonstrate the exchange was for new value.  Armstrong, 291 F.3d at 525.  Section 547(a) defines "new value" as "money or money's worth in goods, services, or new credit."  11 U.S.C. § 547(a)(2).  The new value must benefit the debtor or its estate but need not go directly to the debtor.  Jones Truck Lines, 130 F.3d at 327.

Defendants assert that Debtors' payments to Debbie are nonavoidable contemporaneous exchanges for new value because each payment yielded further use of credit.  Trustee asserts that Debtors' payments to Debbie did not yield new value.

Defendants are unable to prove the first element of this defense.  They did not present evidence showing both parties intended each payment to be a contemporaneous exchange for new value.  Trustee elicited testimony tending to show Debbie had not contemplated the exact nature of the transactions before or while extending credit to Debtors.  The parties' course of dealing, as shown by Debtors' payments and the credit card statements, demonstrates that Debtors' use of credit was not contingent on specific terms or payments.  The Court finds that Defendants have failed to prove the parties intended each payment to be a contemporaneous exchange for new value.  Therefore, the payments to Debbie are not excepted from avoidance under § 547(c)(1).

**ORDINARY COURSE OF BUSINESS**

Section 547(c)(2) states the trustee may not avoid a transfer:

> (2)  to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

4

> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). This exception encourages creditors to continue dealing with troubled debtors by leaving normal financial relations undisturbed. <u>Armstrong</u>, 291 F.3d at 527.

Defendants must prove, by a preponderance of the evidence, two elements to demonstrate the nonavoidability of a transfer under § 547(c)(2). 11 U.S.C. § 547(c)(2); 11 U.S.C. § 547(g). First, they must demonstrate that the debt was incurred in the ordinary course of business or financial affairs for both parties. 11 U.S.C. § 547(c)(2); <u>Armstrong</u>, 291 F.3d at 527. If it is a first-time transaction, the transaction must be typical compared to both parties' past dealings with similarly-situated parties. <u>In re Ahaza Sys., Inc.</u>, 482 F.3d 1118, 1125 (9th Cir. 2007); <u>Kleven v. Household Bank F.S.B.</u>, 334 F.3d 638, 643 (7th Cir. 2003).

Second, Defendants must establish either that the transfer occurred in the ordinary course of business or financial affairs between the debtor and creditor <u>or</u> that the transfer was made according to ordinary business terms. 11 U.S.C. § 547(c)(2)(A)-(B); <u>In re U.S.A. Inns of Eureka Springs, Ark., Inc.</u>, 9 F.3d 680, 684-685 (8th Cir. 1993). To demonstrate ordinary course of business, a creditor must show that the transfer at issue is consistent with the pattern of previous transfers between the particular parties. <u>In re Laclede Steel Co.</u>, 271 B.R. 127, 131 (B.A.P. 8th Cir. 2002), <u>aff'd per curiam</u>, 47 Fed. Appx. 784 (8th Cir. 2002). When there is no established relationship between the parties, the creditor must demonstrate the parties' conformity with contract terms. <u>Kleven</u>, 334 F.3d at 643; <u>Ahaza</u>, 482 F.3d at 1125. To demonstrate ordinary business terms, the creditor must first identify the relevant industry and provide evidence of industry practice. <u>U.S.A. Inns</u>, 9 F.3d at 685. The creditor must next demonstrate that the transfer was made in a manner falling within these practices. <u>Id.</u> at 685-86. Only dealings that are idiosyncratic or extraordinary fall outside ordinary business terms. <u>Id.</u>

Defendants assert that all transfers from Debtors to Defendants are nonavoidable because they occurred in the ordinary course of business. They claim that Defendants made the loans to Debtors in the ordinary course of Defendants' financial affairs and that Debtors made the transfers to Defendants in the ordinary course of Debtors' business. Trustee contends that neither Defendant ordinarily extends credit to family members and Debtors' payments to Defendants have no ordinary pattern.

Defendants have failed to prove the first element of this defense. Defendants are not in the business of extending credit

5

to small businesses, individuals, or family members. Dennis testified that he has not made other loans to anyone, including family members, or cosigned loans for anyone else. Debbie testified that she has not ever allowed anyone else to use her credit card for any purpose or made any significant loans to family members. The Court finds that Debtor's underlying indebtedness to Defendants was not incurred in the ordinary course of Defendants' business or financial affairs. Therefore, none of the preferential transfers are excepted from avoidance under § 547(c)(2).

## SUBSEQUENT ADVANCE

Section 547(c)(4) states the trustee may not avoid a transfer:

> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). The policy underlying the subsequent advance exception recognizes that a creditor replenishes the estate when it advances new value after receiving a preferential transfer. In re Kroh Bros. Dev. Co., 930 F.2d 648, 652 (8th Cir. 1991).

Defendants must prove, by a preponderance of the evidence, three elements to demonstrate this defense. Id.; 11 U.S.C. § 547(c)(4); 11 U.S.C. § 547(g). First, they must establish they received a preferential transfer under § 547(b). Kroh Bros., 930 F.2d at 652. Second, Defendants must prove they advanced new value to Debtors after receiving the preferential transfer and prior to Debtor's bankruptcy filing. Id.; Southern Technical College, Inc., v. Hood, 89 F.3d 1381, 1385 (8th Cir. 1996). Finally, Defendants must show that Debtors did not repay them for the new value they advanced. Kroh Bros., 930 F.2d at 652. The analytical focus of the third element is on whether the new value replenished the bankruptcy estate. Id. If a debtor receives new value after making a preferential payment, the new value replenishes the estate. Id.

6

Defendants assert that all payments made by Debtors to Debbie prior to January 10, 2006 are nonavoidable under § 547(c)(4) because Debbie subsequently extended new value. Trustee argues Debbie's loan to Debtors was essentially a single loan of the entire available credit line.  Consequently, Trustee asserts, each use of the cards was a withdrawal on the initial loan, not a new extension of credit.

This Court previously found that the payments were preferential.  Defendants have therefore established the first element of the defense.

Debtors made payments totaling $5,351 to Debbie starting on October 2, 2005.  Debbie testified that all the payments were on account of the credit cards.  Debtors made no purchases on the Capital One card during the preference period (Ex. 6).  Any part of the payments related to that card is not insulated from recovery under § 547(c)(4) because Debtors did not receive new value.  Debtors made purchases totaling approximately $3,971.84 on the AT&T Universal card after October 2, 2005 (Ex. 6).

Even assuming Debtors' purchases on the AT&T card constitute new value, Debtors' payments of $5,351 to Debbie exceed the amount of new credit they utilized during the same time period. Because Debbie was fully compensated for any subsequent new value extended, the payments from Debtors to Debbie are not excepted from avoidance under § 547(c)(4).

## SMALL COMMERCIAL PREFERENCE

Section 547(c)(9) states the trustee may not avoid a transfer:

> (9) if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $5,000.

11 U.S.C. § 547(c)(9).  This exception insulates small commercial preferences from avoidance because the amount of the preference does not justify the litigation costs incurred to recover the transfer.  David B. Young, Preferences and Fraudulent Transfers, 895 PLI/Comm. 713, 828 (2007).

Defendants must demonstrate, by a preponderance of the evidence, two elements to prove this defense.  11 U.S.C. § 547(c)(9) 11 U.S.C. § 547(g).  First, they must establish that Debtors' debts are "not primarily consumer debts."  11 U.S.C. § 547(c)(9).  "Consumer debts" are those "incurred by an individual primarily for a personal, family, or household

7

purpose." 11 U.S.C. § 101(8). Second, Defendants must show that the aggregate value of the preferential transfers is less than $5,000. 11 U.S.C. § 547(c)(9).

The value of multiple transfers to a single creditor may be aggregated if they are part of a single transaction. In re Pickens, 2007 WL 1650140, *5 (Bankr. N.D. Iowa June 4, 2007) (adopting the transactional approach to determine whether aggregation is appropriate). Thus, payments made to one creditor within the preference period are aggregated when the payments relate to the same debt. Id. at *3. If transfers to a single creditor involve separate forms of property, such as payments and a security interest, the transfers may be aggregated if they were made as part of a single transaction. Id. at *4. Utilizing the transactional approach, the Court analyzes the underlying facts and circumstances of the transfers to determine if they were made pursuant to a single, common plan. Id.; In re Furley's Transp., Inc., 272 B.R. 161, 174 (Bankr. D. Md. 2001); In re Miller, 123 B.R. 46, 47 (Bankr. C.D. Ill. 1991).

If two or more creditors jointly hold a claim against the estate or owe a debt to the estate, the Court presumes they hold the interest or debt in equal shares. See, e.g., In re Estate of Thomann, 649 N.W.2d 1, 6 (Iowa 2002); Allison v. L.E. Allison Estate, 560 N.W.2d 333, 334 (Iowa 1997). Evidence relating to actual apportionment may rebut this presumption. Thomann, 649 N.W.2d at 6.

In an earlier ruling in this adversary proceeding, this Court stated that the value of the payments and the value of the security interest could be aggregated "if the purported transfer of a security interest to Defendants is transactionally related to the payments they received during the preference period." Pickens, 2007 WL 1650140, at *5. This Court denied Trustee's Motion for Partial Summary Judgment on Defendants' small commercial preference defense. Issues of fact exist regarding whether the transfers were made pursuant to a single transaction, the actual value of the security interest, and the correct apportionment of its value between the two Defendants. Id.

Debtors state on page one of their Chapter 7 petition that the nature of their debts is "business." Defendants both testified that they extended credit to Debtors to finance Candle Scents. No contradictory evidence was presented. Defendants have established the first element of a § 547(c)(9) defense.

Trustee asserts that the value of Debtors' payments to each Defendant must be aggregated as to that Defendant. She further argues that the value of Defendants' inventory lien must be added to the value of the payments Debtors made to Dennis. The parties stipulate that the inventory had a value of $2,000. Defendants

8

argue the lien should not be aggregated with the payments because it provided no value to Dennis and its perfection was not related directly to the payments.  The Court is unaware of any authority supporting this contention and Defendants cite none.  Under Eighth Circuit law, an initial transferee who receives no benefit from a transfer is nonetheless liable to the Trustee.  In re Reeves, 65 F.3d 670, 676 (8th Cir. 1995); 11 U.S.C. § 550(a).

Debbie testified that all Debtors' payments to her were for their use of her credit cards.  Those payments are therefore part of a single transaction and have an aggregate value of $5,351.  As this Court noted in a previous ruling on this matter, this amount exceeds the $5,000 cap in § 547(c)(9) and Debbie may not rely on the small preference defense to shield these payments from Trustee.  Dennis testified that all the payments Debtors made to him were on account of his loan to them.  Those payments are thus part of a single transaction and have an aggregate value of $3,005.

The security agreement creating the inventory lien states that Debtors granted the security interest to Defendants for "loans for the benefit of Candle Scents business which includes second mortgage on secured parties home together with credit card balance" (Ex. 3).  It explicitly ties the security interest to Debbie's credit card balance and Dennis' second mortgage.  Debtors' payments to both Defendants and the grant of the security interest are therefore transactionally related and the values may be aggregated.

Neither party presented evidence or argument regarding the apportionment of the security interest's value to each Defendant.  Defendants are listed jointly on the security agreement and UCC financing statement.  Neither document mentions apportionment.  In the absence of evidence on this issue, the Court concludes that each Defendant should be allocated a fifty percent interest in the security interest.

The total amount Debtors transferred to Debbie is $6,531 when the payments and the value of the inventory lien are aggregated.  This amount exceeds the $5,000 cap in § 547(c)(9).  The total amount Debtors transferred to Dennis is $4,005 when the value of the inventory lien and payments are aggregated.  Because this amount is less than $5,000, Debtors' transfers to Dennis are excepted from avoidance under § 547(c)(9).

**CONCLUSION**

Defendants failed to prove the necessary elements of their contemporaneous exchange for new value, ordinary course of business, and subsequent advance defenses.  Debtors' aggregate transfers to Dennis total $4,005 and are excepted from avoidance

9

under § 547(c)(9).  Debtors' aggregate transfers to Debbie total $6,531 and are not excepted from avoidance under § 547(c)(9). Trustee may recover $6,531 from Debbie for the benefit of the estate.  The Court declines to reconsider its previous Order holding that Defendants may not "stack" § 547(c) defenses to bring the value of the transfers below the $5,000 limit of § 547(c)(9).

**WHEREFORE**, Debtors' transfers to Dennis Pickens, totaling $4,005, are excepted from avoidance under § 547(c)(9).

**FURTHER**, Debtors' transfers to Debbie Pickens, totaling $6,351, are avoidable preferential transfers.

**FURTHER**, Trustee is entitled to a judgment in the amount of $6,351 against Debbie Pickens and judgment shall enter accordingly.

Dated and Entered: January 3, 2008

Paul J. Kilburg
Bankruptcy Judge

10